## Commonwealth v. Woodlands Cemetery Co. (No. 2)

*Peter Florey*, for escheator.

*Philip Price*, for respondent.

FLOOD, J., September 19, 1957.—The Commonwealth's petition for escheat, the answer of respondent and the stipulation of facts filed by the parties set forth the essential facts.

On July 13, 1840, a deed of the property later known as Woodlands Cemetery was executed and delivered by Thomas Mitchell et ux. to Benjamin G. Mitchell. On the same date a second deed of the same property was executed and delivered by Benjamin G. Mitchell in turn to Garrick Mallery et al., and an acknowledgment of trust was executed by Garrick Mallery et al., the grantees in the second deed. Under

these instruments, a certain tract of 75 acres later known as Woodlands Cemetery vested in Garrick Mallery et al., in trust to be divided into lots and sold, the purchase price to be divided into one-thirtieth parts and paid over to persons named in the acknowledgment of trust. By deed dated June 3, 1843, this property was conveyed by Garrick Mallery et al., trustees, to Woodlands Cemetery Company. Certain portions of this property were sold in recent years and other portions were condemned by the city and the United States Government and transferred as the result of the condemnation proceedings. In addition to its remaining real estate, the company in 1954 held funds in excess of $700,000, the major part of which resulted from the condemnation proceedings.

Woodlands Cemetery Company was chartered on April 13, 1840, by an act which provided that the incorporators or managers of the company should have power to purchase so much of the Woodlands Estate, not exceeding 75 acres, as they might think necessary for the cemetery, to divide it into lots and to do other things necessary to adapt it for this purpose and to sell the lots in fee simple or otherwise for sepulture under such rules and regulations as the managers might establish for the government of the lot holders. By resolution, the corporation determined to purchase the 75 acres described in the deed. It further resolved that "the interest of Woodlands Cemetery Company in the Woodlands Estate" when acquired should be divided into 600 shares or equal parts, for which there should be issued certificates each of which would entitle the person to whom it was issued, his heirs and assigns, to a "one equal six-hundredth part of the interest of the Company in the Woodlands Cemetery".

The resolution also stated that each certificate should

be "considered and held as stock representing and worth Two hundred and fifty dollars". The resolution goes on to state that each certificate should entitle the owner to a lot of 1,000 square feet, and a "contingent interest" of one six-hundredth part in the remainder of the ground and the net proceeds arising therefrom. By a further provision of the resolution each cemetery lot is to be taken by direct grant to the certificate holder from the company. Five hundred forty of the 600 certificates were issued directly to those who were the beneficial owners of the real estate prior to the conveyance in return for their consent to the conveyance of the title to the company. The other 60 shares were held to be sold to raise money for the development of the cemetery.

It appears, upon study of these papers, that only a portion of the ground was to be divided into cemetery lots and the individual owners retained no power to sell any part of the remaining acreage, thus insuring proper surroundings for the cemetery lots which were occupied. Under this plan there never were any surplus funds to divide until certain parts of the property were conveyed as a result of eminent domain proceedings, creating a cash surplus considerably in excess of what appeared necessary to properly care for the cemetery.

The whereabouts of a number of the certificate holders have been unknown to the company for a period of seven successive years. Their interest is escheatable in this proceeding if it is the interest of a cestui que trust or beneficial owner of, or person entitled to, the real estate and the proceeds from the condemnation. The company contends that the certificate holders cannot be so classified, but are merely shareholders in the company without any direct interest in this property.

The interest we are primarily concerned with is the interest in the cash proceeds of the property taken by eminent domain. The Commonwealth has made no effort to reach any other property interest. Despite the broader language in the petition, the commission granted to the escheator by the Commonwealth, through its secretary of revenue, covers only "unclaimed moneys in the Woodlands Cemetery" and we restrict our determination to the right to escheat such moneys.

The proceeds of the condemnation are in excess of any amount that would be necessary to maintain the cemetery lots in good condition. According to a communication from the company to its certificate holders in 1954, the company had outstanding only 574 shares and the excess was sufficient to warrant the purchase of shares at $1,100 each. This communication assumed that not more than 500 shares would be presented for redemption since it stated that the company had set aside only $550,000 for the purpose. According to the stipulation of facts approximately 450 shares have been purchased by the company at the aforesaid price. The names of registered owners whose whereabouts are unknown and the number of shares registered in the names of such persons are set forth in an "Exhibit I" which was omitted inadvertently from the stipulation of facts. Consequently, the record does not yet show the present balance of the $550,000 fund, the number of shares presently outstanding and the number of such shares which are owned by persons whose whereabouts are unknown.

In addition to the resolution recited in the deed the escheator relies upon a limitation on the company's power to hold personal property, set forth in the act incorporating the company, and the absence of any express authority therein to issue stock. Section 6 of

the incorporating act states that the company "shall be capable of holding so much personal property as may be necessary for the managers, out of the proceeds of the sale of burial lots, to create a fund . . . the income whereof shall be . . . applied as may be necessary, for the improvement and perpetual maintenance of the cemetery . . .". The act is silent with respect to the capital of the company, no authority having been given it to issue stock.

The company takes the position that the excess moneys in its general fund are owned solely by it so that the only personal property owned by any certificate holder is the share certificate itself, or the stock interest which it represents, and that this may not be escheated by a proceeding against the company alone. There are several substantial difficulties with this defense. The company was never empowered to issue stock, nor was it empowered to hold more personal property than should be required for the maintenance and improvement of this particular cemetery property. Additionally, prior to the grant to the company, resolutions were passed which provided that "the interest of Woodlands Cemetery Company in the Woodlands Estate" should be divided into shares or parts, that certificates should be issued for such shares or parts entitling the persons to whom they were issued to "one equal six hundredth part of the interest of the Company in the Woodlands Cemetery" and that each certificate should entitle the owner to a lot and a "contingent interest . . . in the remainder of the grounds and the net proceeds arising therefrom . . .".

So far as appears from the act incorporating the company and the deed itself, which, we think, are the important documents, the certificates were intended to constitute documentary evidence of beneficial in-

terests in specific property. This is set forth so circumstantially that their interests are not changed into mere shareholder interests by the recitation that the certificates are to be "considered and held as stock". Nor is their essential nature changed by the fact that the actual certificates state that the holder is entitled "to one share, or 600th part of the stock or interest in the Woodlands Cemetery Company of Philadelphia" rather than a six hundredth part of the interest of the company in Woodlands Cemetery, a lot and a contingent interest in the remainder of the grounds and the net proceeds arising therefrom. This recital is no more effective to convert the beneficial interest in specific real and personal property into an ownership share of a corporate entity than is the equivocal recital in the deed.

Since the relationship between the company and the owners of its outstanding shares is that of trustee and cestuis que trust and since the escheat is based upon section 3 of the Act of May 2, 1889, P. L. 66, as amended, 27 PS §333, rather than section 1 of the act, 27 PS §1, the 21-year limitation provision contained in section 26 of the act, 27 PS §101, is inapplicable. See Bousquet's Estate, 206 Pa. 534 (1903).

The owners of the outstanding certificates, both known and unknown, are the beneficial owners and persons entitled to the remaining balance of the $550,-000 fund which was set aside for the purpose of reacquiring outstanding shares, plus any accretions thereto. Counsel will submit a decree ordering the escheat of so much of this balance, without interest, as belongs to registered owners whose whereabouts have been unknown to the company for a period of seven successive years.